WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Robert Lewis,<br><br>               Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>               Defendant. | No. CV-20-00765-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Larry Lewis's Application for Disability Insurance Benefits by the Social Security Administration ("Commissioner") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), Defendant's Answering Brief (Doc. 20, "Def. Br."), and Plaintiff's Reply Brief (Doc. 21, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 13, "R.") and now affirms the Administrative Law Judge's decision.[1]

**I.     BACKGROUND**

Plaintiff filed his application for benefits on February 25, 2016, alleging disability beginning August 25, 2015 after a "stroke-like" incident caused him to be hospitalized. (R. at 14, 22.) The Commissioner denied Plaintiff's application initially and again upon reconsideration. (*Id.* at 14.) On March 11, 2019, Plaintiff appeared at a hearing before an

---

[1] Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

administrative law judge ("ALJ"). (*Id.*) The ALJ considered whether Plaintiff has been disabled since August 25, 2015. (*Id.* at 14–30.) The ALJ issued a written decision finding Plaintiff not disabled. (*Id.* at 16–30.) On February 19, 2020, the Appeals Council denied review, making the ALJ's decision final and ripe for this Court's review. (*Id.* at 1.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ found Plaintiff had "severe" medically determinable impairments of obesity, chronic fatigue syndrome, left ankle arthritis, myalgia, asthma, anxiety, depressive disorder, and post-traumatic stress disorder. (*Id.* at 18.) The ALJ also found Plaintiff had several "non-severe" medically determinable impairments of diabetes, thyroid disorder, hypertension, sleep apnea, a positive TB test, status-post surgical repair of a torn Achilles, and headaches. (*Id.*)

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 25, 2015. (*Id.* at 18.) However, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light" work as defined in 20 C.F.R. § 404.1567(b). (*Id.* at 18–21.) Specifically, the ALJ found that Plaintiff can frequently operate foot controls bilaterally; can never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally; can have occasional exposure to non-weather related extreme heat and excessive noise; can have frequent exposure to pulmonary irritants; and can have no exposure to dangerous machinery. (*Id.* at 21.) The ALJ further found that Plaintiff can perform work "with tasks that can be learned by demonstration within thirty days." (*Id.*) In considering Plaintiff's age, education, work experience, and RFC, the vocational expert found that Plaintiff could perform the requirements of occupations such as housekeeper, office helper, and cashier. (*Id.* at 30.) The ALJ found these occupations exist in significant numbers in the national economy such that Plaintiff should be able to make a successful transition to one of them. (*Id.*) Thus, the ALJ concluded Plaintiff has not been disabled since August 25, 2015. (*Id.* at 31.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.  DISCUSSION

Plaintiff argues the ALJ erred in evaluating his claim by: (1) improperly dismissing his symptom testimony and (2) misevaluating various medical opinions in the record, such that his RFC is not supported by substantial evidence. The Court addresses each argument in turn.

### A.  Plaintiff's Symptom Testimony

Plaintiff first argues the ALJ improperly dismissed his subjective symptom testimony. (Pl. Br. at 15.) Plaintiff alleges the ALJ did not "connect the discussion of the medical evidence to a finding that any specific part of the symptom testimony lacked credibility." (*Id.* at 17.) Defendant responds that "the ALJ specifically considered Plaintiff's allegations and cited evidence that contradicted his testimony." (Def. Br. at 6.) The Court agrees with Defendant.

The ALJ must consider the claimant's subjective testimony when determining his RFC but need not necessarily credit that testimony. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1529(a). When deciding whether to credit a claimant's testimony, the ALJ must engage in a two-step analysis. *Molina*, 674 F.3d at 1112. First, the ALJ "determine[s] whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Then, the ALJ evaluates the statements in context of the (1) objective medical evidence and (2) other evidence in the record. *See* 20

C.F.R. § 404.1529(c)(2)-(3). The ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Although the "clear and convincing standard is the most demanding required in Social Security cases," the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Thus, when weighing the claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between [his] testimony and [his] conduct, claimant's daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains."[2] *Thomas*, 278 F.3d at 958–59. Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for [his] symptoms." *Lingenfelter*, 504 F.3d at 1040. Ultimately, if the ALJ's credibility finding is supported by substantial evidence, courts may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ properly discounted Plaintiff's symptom testimony for specific, clear, and convincing reasons supported by substantial evidence. The ALJ considered Plaintiff's testimony that "he has experienced fatigue since late 2015," he is "in constant pain and [has] difficulty focusing on tasks," and he has limitations to "lifting, standing, reaching, walking, talking, stair climbing, remembering, completing tasks, concentrating, understanding, following instructions, using his hands, and getting along with others." (R. at 22.) The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause these alleged symptoms, thus satisfying step one of the analysis. (*Id.*) In considering step two, however, the ALJ determined Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent

---

[2] While the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence," the ALJ may not "reject a claimant's subjective pain or symptom testimony *simply because* the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter*, 504 F.3d at 1040 (emphasis added).

with the medical and other evidence in the record. (*Id.*) The ALJ discounted Plaintiff's symptom testimony for several reasons, including (1) the testimony was unsupported by the objective medical evidence in the record, (2) several of Plaintiff's symptoms showed improvement with medication, and (3) Plaintiff was engaging in daily activities inconsistent with his alleged symptoms. (*See id.* at 22–25.)

First, the ALJ properly discounted Plaintiff's symptom testimony because it was inconsistent with the objective medical evidence in the record. The ALJ concluded that "the medical evidence as a whole fail[s] to corroborate the full extent of the alleged severity, limiting effects and frequency of the [Plaintiff's] medical conditions." (*Id.* at 22.) In proving this, the ALJ first refuted Plaintiff's assertions of physical disability including joint and coordination issues, constant pain, asthma, obesity, and chronic fatigue. (*Id.* at 21–25.) The ALJ dismissed Plaintiff's claim of general joint pain and coordination issues by noting that his medical exams showed normal musculoskeletal strength, normal range of motion in his joints, and normal finger to nose and heel to shin testing. (*Id.* at 23; *see id.* at 636, 711, 911, 915, 1145, 1210, 1254, 1477.) The ALJ also emphasized that the record had no medical evidence showing joint swelling or stiffness that would presumably cause such symptoms. (*Id.* at 23.) The ALJ dismissed Plaintiff's claim of being in "constant" pain by noting that his radiographs "showed only of mild ankle arthritis" and his bloodwork "was negative for inflammatory arthritis." (*Id.* at 24; *see id.* at 1493–95, 1834.) The ALJ then acknowledged Plaintiff's asthma diagnosis but dismissed his assertion that it was debilitating by pointing to his normal lung exams and mild spirometry tests. (*Id.* at 24; *see id.* at 636, 910, 1006–07, 1087.) Although a lack of medical evidence in the record cannot on its own discount a Plaintiff's symptom testimony, it is a common factor the ALJ can consider when assessing credibility. *See Burch*, 400 F.3d at 681.

When refuting his claim of chronic fatigue, Plaintiff argues the ALJ "failed to list *any* evidence to refute [Plaintiff's] reports of the fatigue" he continually experienced after his hospitalization in 2015. (Pl. Br. at 17 (emphasis added).) The Court acknowledges that when ultimately dismissing Plaintiff's claim of chronic fatigue, the ALJ made a general

statement that Plaintiff's "lab work" did not support his assertion of complete debilitation. (R. at 25.) The ALJ, however, first gave a more robust explanation for dismissing Plaintiff's claim. (*See id.* at 22–24.) The ALJ noted "[m]ultiple examinations showed of normal gait, as well as normal strength in his bilateral lower extremities and upper extremities, showing that despite his spells and complaints of fatigue and pain, he retained a substantial ability to sit, stand, walk, lift and carry." (*Id.* at 24; *see id.* at 1087, 1153, 1210, 1254, 1785, 1829–32.) Plaintiff argues these physical findings do not support the ALJ's dismissal of Plaintiffs testimony on his need to nap for at least two hours a day and thus his inability to sustain a traditional eight-hour workday. (Pl. Br. at 20; Reply at 9.) The Court disagrees. Although the findings surrounding Plaintiff's claim of chronic fatigue may be susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as to the credibility of Plaintiff's testimony because it is supported by substantial evidence in the record, that is, multiple physical findings to the contrary. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [Courts] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Lastly, the ALJ acknowledged Plaintiff's obesity diagnosis but dismissed his assertion that it was debilitating. (R. at 25.) The ALJ stated that similarly to Plaintiff's fatigue and pain allegations, which were reasonably considered and accounted for in the RFC finding, "a reduction to the light exertional level would be sufficient to accommodate the extra stress that [Plaintiff's] obesity places on his lungs and skeletal system." (*Id.* at 22, 25.)

The ALJ then refuted Plaintiff's assertions of cognitive decline including logic issues, word finding issues, memory loss, attention difficulties, speech issues, spelling issues, concentration difficulties, and thought processing difficulties. (*Id.* at 22.) The ALJ pointed to several instances throughout a two-year period where Plaintiff's cognitive testing scores were within the expected range for his age. (*Id.* at 23–24; *see id.* at 702, 1451.) For example, the ALJ noted that after his 2015 hospitalization and despite his claims

of memory loss, Plaintiff's "memory scored in the average to high average range," and "his ability to pay attention and concentrat[e] was in the high-average range." (*Id.* at 23; *see id.* at 702.) In 2016, despite his claims of word finding and speech issues, Plaintiff "was able to carry on a conversation without significant difficulty," "his full-scale IQ was 117, which was in the high-average range," and his "speech was normal." (*Id.* at 23, 578, 585–86.) By 2017, Plaintiff remained "alert and attentive," "his fund of knowledge was average," and "his thought process was of a normal continuity and rate." (*Id.* at 24, 1784–85.) Thus, the ALJ relied on specific examples when explaining why she did not believe Plaintiff's cognitive symptom testimony was credible. *See Garrison*, 759 F.3d at 1018. The ALJ also refuted Plaintiff's allegation that he had difficulty getting along with others by noting several instances in which he was "appropriately dressed and well-groomed" for his medical appointments, "friendly and cooperative" with his physicians, and exhibiting "normal mood, affect, and behavior." (R. at 24, 549, 1268, 1452, 1717.) The ALJ therefore did not err in discounting Plaintiff's testimony on account of a lack of corroboration from the objective medical evidence. *See Lingenfelter*, 504 F.3d at 1040.

Additionally, the ALJ properly discounted Plaintiffs symptom testimony because of the reported effectiveness of medication in reducing or eliminating several of his symptoms. (R. at 25.) Social Security regulations allow ALJ's to consider the effectiveness of medications taken when evaluating the intensity and persistence of a claimant's subjective symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). Here, the ALJ noted that with repeat Botox injections, Plaintiff showed improvement in terms of the frequency and severity of his headaches. (R. at 25; *see* R. at 1792.) The ALJ also pointed to reported emotional and cognitive improvement on medication. (*Id.* at 25.) *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). During his most recent psychiatric exam in January 2019, Plaintiff reported Venlafaxine was helping to stabilize his mood and irritability. (R. at 1781.) Plaintiff argues the ALJ failed to acknowledge that Venlafaxine was also causing notable side effects and was intended to be discontinued from Plaintiff's

treatment plan. (Pl. Br. at 20.) While the Court acknowledges this, it is still noteworthy that Venlafaxine was improving Plaintiff's alleged symptoms for the year he was taking it and that his physician planned to replace Venlafaxine with Duloxetine to achieve the same result. (R. at 1781–85.) At the same 2019 appointment, Plaintiff also expressed that he and his wife noticed improvement to his energy and concentration levels while he was taking Ritalin. (*Id.*) His dose of Ritalin was thus increased. (*Id.*) Plaintiff also reported that due to his combination of medications, his chronic pain had improved since his last exam. (*Id.*) Finally, Plaintiff reported improvements to his joint issues on Entanercept and noted that he continually used a CPAP machine as well as Mirtazapine to help with his sleep apnea. (*Id.* at 1781.) Therefore, the ALJ did not err in discounting Plaintiff's testimony on account of symptom improvement with medication.

Lastly, the ALJ discounted Plaintiff's symptom testimony on account of his daily activities that were found inconsistent with his allegations of disability. (*Id.* at 25.) The ALJ noted that Plaintiff was "advised to be active" by his doctors and "was able to travel with his father in a motor home on vacation." (*Id.*) Plaintiff argues the ALJ needed to prove that while traveling in the motor home "a substantial part of [his] typical day" was spent engaging in inconsistent activities. (Pl. Br. at 21–22.) Thus, Plaintiff argues because the ALJ did not inquire as to how often Plaintiff needed to rest or how much activity was being performed while traveling, she mistakenly assumed he was engaging in activities inconsistent with his symptom testimony. (*Id.*) Even so, considering the other two legally valid reasons for supporting the ALJ's conclusion that Plaintiff's testimony was not credible, any error the ALJ may have committed in assuming Plaintiff was active while traveling was harmless. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ may have committed in assuming without confirmation from the record that plaintiff was sitting while watching television and thus engaging in inconsistent daily activities was harmless and did not "negate the validity of the ALJ's ultimate conclusion that [plaintiff's] testimony was not credible"). Accordingly, the Court will not remand on this basis.

**B.     Medical Opinion Evidence**

Plaintiff also argues the ALJ improperly weighed the medical opinion evidence in the record. (Pl. Br. at 25.) Plaintiff alleges the ALJ improperly rejected both Dr. Matthew Robert Anderson's and Dr. Dane Higgins's assessments, "that were based on actual examination of [Plaintiff] . . . [and] then assigned 'partial weight' and 'some weight' to the opinions of desktop reviewers who completed assessment forms for the state agency as part of the initial and reconsideration determinations." (*Id.*) Defendant responds that the ALJ properly gave "partial" and "some" weight to the opinions of the state agency physicians and "little" weight to the opinions of treating physician Dr. Anderson and examining physician Dr. Higgins. (Def. Br. at 14–15.) The Court finds Defendant's argument persuasive.

The ALJ considers the various medical opinion evidence in the record when assessing a claimant's RFC. *See* 20 C.F.R. §§ 416.927, 416.945(a)(3). "[P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability–the claimant's ability to perform work." *Garrison*, 759 F.3d at 1012. In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical

evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 416.927(c)(1)–(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

### 1. Dr. Anderson's Assessments

Here, the ALJ considered medical assessments from Dr. Anderson, Plaintiff's treating physician. (R. at 26–27.) In 2016, Dr. Anderson originally found Plaintiff was experiencing some minor physical and cognitive impairment but stated that further testing was needed to obtain a definitive diagnosis. (*Id.* at 900.) Just a few months later, in a pre-printed Navient private loan form, Dr. Anderson stated Plaintiff was "totally and permanently disabled." (*Id.* at 1334.) In 2017, Dr. Anderson stated Plaintiff had moderately severe limitations in "understanding, remembering, and carrying out instructions; responding appropriately to others; performing simple tasks" and had "a severe limitation in responding to customary work pressures." (*Id.* at 1449–50.) He later wrote a temporary excuse stating Plaintiff should be off work for six weeks. (*Id.* at 1150.) Finally, Dr. Anderson concluded Plaintiff's many limitations would put him off task greater than 21% of an eight-hour workday. (*Id.* at 1450.) The ALJ assigned "little weight" to Dr. Anderson's assessments. (*Id.* at 27.)

The Court finds no error. First, the Court agrees with Defendant's argument that Dr. Anderson's 2016 finding of total and permanent disability is a conclusory opinion that is not binding on the ALJ. *See Batson*, 359 F.3d at 1195 (stating that the ALJ may permissibly reject conclusory and brief medical opinions). The Court also finds the ALJ properly concluded Dr. Anderson's assessments were unsupported by the objective medical evidence and inconsistent with the other opinion evidence. (R. at 26–27.) A lack of support from objective medical evidence as well as inconsistencies with other evidence in the record are both legitimate bases on which a treating source's opinion can be discounted or rejected. See 20 C.F.R. §§ 416.927(c)(3)–(4). When assigning little weight to Dr. Anderson's assessments, the ALJ specifically referenced the objective physical and cognitive findings discussed above. (R. at 27.) For example, the ALJ reiterated that

Plaintiff's cognitive testing scores were in the expected range for his age and his range of motion, gait, and musculoskeletal strength were all normal. (*Id.*; *see id.* at 636, 711, 911–15, 1087, 1145, 1153, 1210, 1254, 1451, 1477, 1785, 1829.) Thus, the ALJ adequately explained her conclusion that the objective medical evidence did not support the extent of physical and cognitive limitations opined by Dr. Anderson.

As for the other opinion evidence, although the ALJ did not list the specific inconsistencies in the paragraph discussing Dr. Anderson's assessments, the ALJ did note these inconsistencies throughout the decision. In the preceding paragraphs, the ALJ referenced multiple medical opinions by state agency consultants that were given "partial" and "some" weight. (*Id.* at 26.) The opinions found that Plaintiff's overall psychological limitations were not severe enough to show that as Dr. Anderson had concluded, he would be unable to consistently express himself or process verbal information on the job. (*Id.* at 81, 107; *see id.* at 1449.) The opinions also found that Plaintiff's only conclusive physical limitations were "mild difficulties in fine motor coordination" that did not prohibit him from performing semiskilled work on a sustained basis. (*Id.* at 81, 107.) The opinions generally concluded Plaintiff was still able to engage in regular work with minimal functional limitations. (*See id.* at 107.) These conclusions are contrary to Dr. Anderson's assessments of complete disability and severe limitations. (*See id.* at 1334, 1450.)

Ultimately, the ALJ provided specific and legitimate reasons to assign little weight to the assessments of Dr. Anderson by setting out the conflicting evidence, interpreting it, and making findings. *See Magallanes v. Bowmen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 2. Dr. Higgins's Assessments

The ALJ also considered medical assessments from Dr. Higgins, Plaintiff's examining neuropsychologist. (R. at 27.) In 2016, Dr. Higgins opined that "from a neurocognitive perspective," Plaintiff would be unable to gain or maintain gainful employment. (*Id.* at 576.) In 2017, Dr. Higgins further stated Plaintiff had severe limitations to "understanding, remembering, and carrying out instructions; responding appropriately to others; performing simple tasks; and in responding to customary work

pressures." (*Id.* at 1486.) The ALJ assigned "little weight" to Dr. Higgins's assessments. (*Id.* at 27.)

The Court finds no error. As discussed above, a lack of support from objective medical evidence in the record is a legitimate basis upon which an examining source's opinion can be discounted or rejected. *Batson*, 359 F.3d at 1195. When assigning little weight to Dr. Higgins's assessments, the ALJ specifically referenced Plaintiff's normal cognitive testing scores. (R. at 27.) For example, the ALJ pointed to his average to high-average scores in attention, concentration, memory, and IQ. (*Id.* at 27; *see id.* at 578, 585–86, 702.) The ALJ thus demonstrated that Dr. Higgins's assessments on the severity of Plaintiff's cognitive limitations were inconsistent with the objective medical findings in the record because the findings failed to demonstrate that Plaintiff was experiencing difficulty understanding, remembering, and carrying out instructions. The ALJ also cited instances in which Plaintiff exhibited "normal mood, affect, and behavior." (*Id.* at 27, 549, 1268, 1717.) This "normal mood, affect, and behavior" was consistent from 2015–2017. (*See id.*) The record also shows that Plaintiff was typically very friendly and cooperative with physicians, and alert and oriented during his medical appointments. (*See id.*) The ALJ thus demonstrated that Dr. Higgins's assessments on Plaintiff's inability to respond to others and manage work pressures conflicted with the record's objective medical findings.

The ALJ sufficiently explained her conclusion that the objective medical evidence did not support the extent of cognitive limitations opined by Dr. Higgins and did not support his conclusory finding that Plaintiff could not gain or maintain gainful employment. As with the assessments of Dr. Anderson, the ALJ provided specific and legitimate reasons to assign little weight to the assessments of Dr. Higgins by setting out the conflicting medical evidence, interpreting it, and making findings. *See Magallanes*, 881 F.2d at 751.

### 3. State Agency Consultants' Assessments

The ALJ finally considered medical assessments from state agency consultants Sandra Battis, Ernest Griffith, Margaret Pollack, and Rosalia Pereyra. (R. at 26.) Plaintiff

argues the ALJ improperly relied on the opinions of these non-examining consultants who merely reviewed his application at the initial and reconsideration levels and arbitrarily found him not disabled. (Pl. Br. at 23–25.) The Court disagrees. The Ninth Circuit has held that "[t]he opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Because the opinions of the state agency consultants were consistent with other evidence in the record, specifically the objective medical evidence, they could constitute substantial evidence supportive of the ALJ's nondisability finding in this case.

The assessments of Dr. Sandra Battis and Dr. Ernest Griffith, which opined that Plaintiff could perform work at the medium exertional level, were afforded "partial weight" because they were consistent with the objective medical findings in the record. Specifically, that Plaintiff had normal gait, range of motion, musculoskeletal strength, and bilateral and upper extremity strength. (*Id.* at 26; *see id.* at 636, 711, 911, 915, 1087, 1145, 1153, 1210, 1254.) Further, the assessments were consistent with the ALJ's emphasis that the record lacked evidence of joint swelling, stiffness, or inflammatory arthritis. (*Id.* at 26; *see id.* at 23, 1834.) The assessment of Margaret Pollack, which opined that Plaintiff could adequately understand, remember, and concentrate, was given "partial weight" because it was consistent with Plaintiff's average to high-average cognitive testing scores. (*Id.* at 26; *see id.* at 578, 585–86, 702.) The assessment of Rosalia Pereyra, which opined that Plaintiff could maintain fair concentration but may have difficulty with detailed tasks involving fine motor coordination, was afforded "some weight" because it was consistent with Plaintiff's high attention and concentration testing scores but inconsistent with Plaintiff's normal finger to nose and heel to shin testing scores. (*Id.* at 26; *see id.* at 702, 1210.) The Court finds no error here and will not remand on this basis.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the April 15, 2019 decision of the ALJ (R. at 14–31),

as upheld by the Appeals Council (R. at 1–5).

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 2nd day of March, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge